Judge Green,
delivered his opinion.*
The appellee petitioned the County Court of Bedford for leave to build a mill, on Goose creek, on his own land, and to condemn an acre of land belonging to the appellants, on the opposite side of the creek, for an abutment. The jury, in their inquest, find that fish of passage and ordinary navigation, will not be obstructed by a dam ten feet high. The petition of the appellee did not state in whom the bed of the stream was. The appellants opposed this *35 application, on the ground that the bed of the stream was neither in whole nor in part, in the petitioner or the Commonwealth; but in them by virtue of a patent which issued in 1792. They agreed, that no objection should be made on account of the petition failing to state, that the bed of the stream was in the Commonwealth. The County Court refused to grant leave to build the mill, on the ground that the bed of the stream belonged to the defen” dants, and the petitioner appealed to the Superior Court, where the judgment was reversed, and leave given to build the mill. The Superior Court, by agreement of the parties, certified, that it appeared that the patent to Mead covered the bed only of Goose creek, for five or six miles; that the petitioner held the land on one side, and the other parties held the land on the other side, of the stream where the mill was intended to be built; both, by ancient titles originating before 1779; and that no objection was made to the application of the petitioner, except that the bed of the stream belonged to Mead, by virtue of the patent aforesaid, which the Court held to be void.
Upon this record, two questions arise. 1st. Whether the bed of the stream belonged in moieties to Haynes and Mead, or wholly to Mead or the Commonwealth. 2d. Whether, if it belonged in part to the petitioner, he could be entitled, upon shewing that fact, to leave to build a mill, upon a petition not stating that fact; but on the contrary, stating that it belonged to the Commonwealth, as this petitioner must be taken to state the fact, in consequence of the agreement of the parties.
By the common law, every river, so far as it ebbs and flows, belonged to the Crown; but rivers, notnavigable, were the property of the proprietors of the lands on both sides of the river; that is, if both sides of a river not navigable belonged to one owner, the whole river was his; if different persons owned the lands on each side of the river, the bed belonged to them in moieties. Hargrave’s Law Tracts, 5. Davies’s Reports, 152, 155. In Hays v. *36 Bowman, 1 Rand. 417, this doctrine was affirmed to Be law in Virginia, .subject to the "exceptions made by statute, and upon the authority of Call’s Manuscript Report Home v. Richards. This case (which will be m0re particularly adverted to hereafter) determined, that even before the act of 1792, ch. 86,. § 6, the beds of navigable streams were not grantable, and that a grant, bounded by a stream not navigable, extended to the middle of the stream. That act prohibits the granting, since 1779, of the bed of any stream in the Eastern parts of the Commonwealth, which had been used as a common by all the people of the Commonwealth; but not otherwise. The bed of Goose creek not being navigable (as is found virtually by the jury, who find that ordinary navigation would not be obstructed by a dam ten feet high) was grantable befjjfe 1779, and was grantable after that period, if not granted before, unless it appeared that it had been used as a common to all the people of the Commonwealth;—a fact, which not only does not appear in the record, but which is virtually negatived by the finding of the jury, in relation to fish of passage and ordinary navigation. Mead’s patent, therefore, for the bed of the stream might possibly have been valid, if it had not been granted before the date of his patent. But his patent was invalid, because it was alz-eady granted. The facts certified by the Court, upon the agreement of the parties, ascertain this fact. It is stated, that Haynes held the lands on one side of the creek, and Mead on the other, by titles preceding the grant of 1792, to Mead. Their rights to the shores gave them, as an incident to such rights, a right mutually to a moiety of the bed of the-stream, according to the principle of the common law, not affected by any statute in relation to such a stream as this; and according to the principles recognized by this Court, in Home & Hunter v. Richards, and Hays v. Bowman.
A right to a moiety of the bed of the stream being thus vested in the petitioner, could the Court properly give him *37 leave to erect a mill, upon a petition which was either silent as to the ownership, or alledged that it was in the Commonwealth ? In the case of Home v. Richards, reported in 2 Wash. 36, the District Court had decided against Richards’s petition for a mill, because the petition or record did not shew that the bed of the stream was in himself or the Commonwealth; and the Judges of the Court of Appeals being equally divided in opinion on that point, the judgment was affirmed. This was the only point in the cause, and the affirmance of the judgment was no authority for other cases. Exactly one year after this, in 1795, the question again occurred in Wroe v. Harris, 2 Wash. 126. In that case, the petitioner stated that ho held lands on both sides of the stream, but did not state that the bed of the stream was in himself or in the Commonwealth. This objection was taken. Carrington, Judge, thoq^it that when it was stated, that the lands on both sides belonged to the petitioner, the law inferred that the bed belonged to him; and that it was not necessary to state that fact, more explicitly; but that no such inference existed, in ease the land on one side only belonged to the petitioner, and therefore it was necessary to state to the Court, that the bed belonged to the petitioner or the Commonwealth. Judge Lyons said only, that there was nothing in this objection; and Judge Pendleton passed it by without observation, deciding the case against the objection. These eases afford nothing like obligatory authority as to this point. Upon principle, I should think, that as the application to the Court may be ore tenus, no form whatever is necessary; and that the petitioner may shew, at any stage of the proceedings, that the circumstances of his case justify his claim to leave to build a mill. It is not, however, necessary to discuss this question upon principle; for, it was decided in 1798, by the unanimous opinions of the Judges of the Court of Appeals then sitting, that a petitioner who stated in his petition, that the bed of the stream belonged to the Commonwealth, might entitle him *38 self to leave to build a mill, by proof that the bed of the stream belonged to himself and not to the Commonwealth; and the same principie will apply now, by virtue of the acj- 0£ jgO? when the petitioner shews, that he owns a moiety of the bed of the stream. That was the case of Home & Hunter v. Richards, referred to in Hays v. Bowman, decided in. April 1798, and not reported. It was a decision upon a petition exhibited in 1796 by Richards, in consequence of the decision against him in 1794, reported in Washington. The case of Home v. Richards, reported in Ü Call, was a decision upon a petition of Home v. Hunter, opposed by Richards, and the allusion in the judgment of the Court, to the former decision of the case of Home v. Richards, was to the decision on Richards’s second petition, made in 1798, and not to the decision on his first petition made in 1794.
The case decided in 1798, was this: A patent for a large tract of land, on the north side of the Rappahannock, bounded by the river, and including an island in the river near tho northern shore, afterwards called Vicary’s island, was granted in 1690, to Vicary. This land was conveyed to Dixon, who granted to James Hunter a right of way for waggons, through the land on the northern margin of the river, and also the right to navigate the water, between the island and the north shore of the river, up to Hunter’s iron-works, opposite the head of the island on the north bank of the river, and also the rocks in the river. Dixon afterwards conveyed 300 acres of the land on the main land, opposite to Vicary’s island, bounded by the river, to Richards, under whom the petitioner claimed. Richards petitioned to condemn an acre on the island, for an abutment; the dam to be built from his land on the northern margin of the river, across the north prong of the river, to Vicary’s island; and in his petition stated, the bed of the stream to be in the Commonwealth. Home 8f Hunter, claiming under James Hunter, opposed this petition, on the ground that they owned the land on the nor- *39 them margin of the river, and the bed of the stream, by virtue of Dixon’s deed to Hunter. The Judges gave their opinions seriatim. Judge Roane said: “ As Richards’s grant extends to the edge of the river, he necessarily has the lands on one side of it. But, it is not clear to whom the bed of the river belongs; for, it is not stated in the proceedings, whether the stream is navigable in those parts or not. If it be, it is plain the bed is not in the appellants,” (Home & Hunter) “as the soil of navigable rivers cannot be granted; and if it be not navigable, then the bed is not comprised in terms in the deed to Hunter, and the contiguous land upon the main did not belong to him. So that, either way, the appellants are not entitled to it. The bed must, therefore, be either in Richards, as proprietor of the main land, and consequently, owner to the middle of the river; or in the Commonwealth, as a publife highway for all the community; which last is probably the case. But, the enquiry is unimportant; for, Richards, whether the bed be in himself, or the Commonwealth, may, in either event, exercise full dominion over the place through which the right of passage is claimed . 5'
Judge Carrington said: “The bed of the river is probably in the Commonwealth, and therefore could not be conveyed. But, it is not necessary to decide that question in this case; for, as the bed is not comprised in the deed to Hunter, it must be in Richards, as owner of the land on one side, if the river be not navigable; or in the Commonwealth, if it is; and either ivill authorise the application of Richards.”
Judge Pendleton said: “This brings us to enquire to whom the bed of the river belongs F It is not stated in. the proceedings, whether the stream in this place is navigable or not; but it is certain, that the bed was either in Dixon, or the Commonwealth. If in Dixon, he did not mean to convey it to Hunter; and if so, then it was embraced by the grant to Richards; or else it is in the Commonwealth as a public highway, never granted, because in *40 capable of being appropriated to the use of a single indivjdua]. But, it is altogether immaterial, whether the l>ed was in l?ie Commonwealth, or Richards; for, in ei¿fier case¡ ffie latter, owning the contiguous land, was authorised to apply to the Court for leave to build a mill.’> And the judgment allowing Richards to build a mill was affirmed.
In the case of Home 8f Hunter v. Richards, the part-ties waived all objections to form in the proceedings. But the Court, in discussing the questions above-mentioned, did not advert to, or rely upon this waiver: nor does it seem to me, that, upon principle, such waiver could have any effect upon those questions; for in these proceedings, no objection should be attended to, unless it be a matter of substance.
I think the judgment of the Superior Court should be affirmed; not, because the bed of the stream was in the Commonwealth; but, because it was partly in the petitioner, and partly in the appellants.
Judges Coalter, Cabell and Brooke, concurred, and the judgment was affirmed.

 Judge Carr, absent