

1997 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-4-1997

# United States v. Arnold

Precedential or Non-Precedential:

Docket 96-1174

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1997

Recommended Citation

"United States v. Arnold" (1997). *1997 Decisions*. Paper 29.
http://digitalcommons.law.villanova.edu/thirdcircuit_1997/29

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1997 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 96-1174
_____

UNITED STATES OF AMERICA,

Appellee

v.

DEAN MARTIN ARNOLD,

Appellant

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. Criminal No. 95-00153)

_____

Argued September 17, 1996

_____

Before: Becker, Nygaard and Roth, Circuit Judges
_____

Michael A. Schwartz (Argued)
Office of the U.S. Attorney
Suite 1250
615 Chestnut Street
Philadelphia, Pa.  19106

Counsel for the Appellee

Robert Epstein (Argued)
Defender Association of
Philadelphia, Federal Court
Division
437 Chestnut Street
Lafayette Building, Suite 800
Philadelphia, Pa.  19106

Edson A. Bostic
Defender Association of
Philadelphia
609 Hamilton Mall
Sovereign Building, Suite 301
Allentown, Pa.  18101

Filed February 4, 1997

—————

OPINION OF THE COURT

—————

NYGAARD, Circuit Judge:

Dean Arnold appeals his conviction for attempting to murder a witness, 18 U.S.C. § 1512(a)(1)(A), and raises various challenges to his sentence. We will reverse Arnold's attempted murder conviction because it was based solely upon evidence that the district court should have suppressed. Although, by implication, this error also calls into question Arnold's conviction for witness intimidation, 18 U.S.C. § 1512(b)(3), we conclude that the error was harmless, and will affirm. We will also vacate Arnold's sentence and remand the matter to the district court for resentencing.

                            I.

Arnold, while working as an armored car courier for Federal Armored Express, stole $65,000. He told his then fiancee, Jennifer Kloss, about the theft and showed her a lunch thermos in which he had stuffed the stolen money. Later, Arnold stole an additional $15,000 and again told Kloss what he had done. On another occasion, while working as an assistant vault person, Arnold stole $400,000 in cash directly from the main vault at Federal Armored Express, and again told Jennifer Kloss.

Fearing that Kloss would tell the FBI about his crimes, Arnold told a few individuals, including Edgardo Ramos and Alex

2

Introcaso, that he would pay someone up to $20,000 to kill Kloss. Introcaso, a private investigator, suspected that Arnold had committed the Federal Armored Express thefts. Seeking a reward, Introcaso contacted the FBI to report his suspicions. He also called the FBI to report Arnold's offer to have Kloss killed.

The FBI, using Introcaso as part of a "sting" operation, recorded a meeting on March 27, 1995, between Introcaso and Arnold at Introcaso's office. At this meeting, Introcaso told Arnold that he had located a hit man willing to kill Kloss for $20,000. Arnold agreed to meet with the hit man the next day and reaffirmed that he had threatened to kill Kloss if she turned him in.

On March 28, 1995 the government obtained a sealed indictment against Arnold charging him with bank theft, money laundering and witness intimidation. The witness intimidation charge specifically alleged that Arnold had threatened to kill Kloss if she provided information to law enforcement officers about the thefts. That afternoon, Arnold met in Introcaso's wired office with undercover officer Louis Tallarico, who was posing as a professional hit man. At this meeting, Arnold reasserted that he was serious about having Kloss killed and showed Tallarico that he had the $20,000 necessary to pay for it. As Arnold left the meeting, the FBI arrested him and seized the $20,000.

The government next obtained a superseding indictment charging Arnold with the additional count of attempted murder of a witness. At trial, a tape recording made at the March 28

3

meeting with the undercover agent was played to the jury over Arnold's objection. The tape was the only evidence the government submitted with respect to the attempted murder charge.

At the sentencing hearing, the district court separated the offenses into three groups: (1) the two bank larceny counts combined with the witness intimidation count; (2) the money laundering counts; and, (3) the attempted killing of a witness count. The base offense level for the attempted killing of a witness offense was 28. Because the offense involved the offer of money for the murder, the offense level was increased to 32. Based upon a finding that Arnold's testimony about his entrapment defense was "willfully false," the court increased Arnold's offense level two more levels to 34 pursuant to § 3C1.1 of the United States Sentencing Guidelines.

The court also granted the government's motion for an upward departure and increased the total offense level by one to 35. The court justified the upward departure on two separate grounds: (1) the grouping rules did not adequately punish the defendant in this case; and, (2) there was still an outstanding sum of money that had not been returned. With a total offense level of 35, the guideline range was 168-210 months imprisonment. The court imposed a 210 month sentence and ordered restitution in the amount of $223,569.

## II.

Arnold argues that the government violated his Sixth Amendment right to counsel by eliciting uncounselled statements from him after he had been indicted for threatening to kill

4

Kloss. Arnold contends that because the sealed indictment had been returned against him, his right to counsel had attached for the witness intimidation charge, and the government was prohibited by the Sixth Amendment from deliberately eliciting uncounselled statements about the closely related attempted murder offense. The witness intimidation and attempted murder of a witness charges are so closely related, Arnold argues, that "the right to counsel for the pending offense [witness intimidation] cannot constitutionally be isolated from the uncharged offense [attempted murder of a witness]." Arnold insists that the district court erred by denying his motion to suppress the tape of his March 28th meeting with the undercover agent. We agree.

### III.

The Supreme Court has held that the Sixth Amendment right to counsel attaches "at or after the initiation of adversary judicial criminal proceedings -- whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." Kirby v. Illinois, 406 U.S. 682, 688-89, 92 S.Ct. 1877, 1881-82 (1972). Under the Sixth Amendment, the government is prohibited from deliberately eliciting incriminating evidence from an accused "after he ha[s] been indicted and in the absence of his counsel." Massiah v. United States, 377 U.S. 201, 206, 84 S.Ct. 1199, 1203 (1964).

The Court has made clear, however, that the Sixth Amendment right is "offense specific" and "cannot be invoked once for all future prosecutions . . . ." McNeil v. Wisconsin, 501 U.S. 171,

5

175, 111 S.Ct. 2204, 2207 (1991). Hence, when investigating new or ongoing criminal activity for which an accused has not been indicted, the government does not violate the Sixth Amendment. Id. at 175-176, 111 S.Ct. at 2207-08. The government may interrogate an accused about unrelated, uncharged offenses to which the right of counsel has not yet attached. Moran v. Burbine, 475 U.S. 412, 431, 106 S.Ct. 1135, 1146 (1986). Moreover, "[i]ncriminating statements pertaining to other crimes, as to which the Sixth Amendment right has not yet attached, are, of course, admissible at trial of these offenses." Maine v. Moulton, 474 U.S. 159, 180 n.16, 106 S.Ct. 477, 489 n.16 (1985); accord Alston v. Redman, 34 F.3d 1237, 1252 n.16 (3d Cir. 1994), cert. denied, 115 S.Ct. 1122 (1995).

Two Supreme Court cases establish a limited exception to the "offense specific" rule. In Brewer v. Williams, 430 U.S. 387, 97 S.Ct. 1232 (1977), the defendant was formally charged with the abduction of a little girl. After being charged with the abduction, the police, using a "Christian burial speech" to gain the trust of the defendant, elicited from him the location of the girl's body. The defendant was subsequently charged with murder and convicted. The Supreme Court affirmed the reversal of the murder conviction and in so doing held that the defendant's statements to the police about the location of the body were inadmissible in his murder trial.

Similarly, in Moulton, supra, Moulton and a co-defendant committed burglary but were originally only indicted for theft. After the indictment was returned, the co-defendant agreed to

6

cooperate with the police and to attempt to elicit incriminating statements from Moulton. This effort was successful, and the incriminating statements made by Moulton to the co-defendant were used as the basis for filing burglary and other additional charges against Moulton. Moulton was convicted, but the Supreme Court of Maine reversed, finding a violation of Moulton's Sixth Amendment right to counsel. The United States Supreme Court affirmed. Significantly, in affirming the Court reversed both the theft and burglary charges, notwithstanding the fact that Moulton had not yet been charged with burglary when he made his statements to the co-defendant.

Relying on Brewer and Moulton, many courts have held that once the right to counsel attaches with respect to a charged offense, it carries over to "closely related" but uncharged crimes.[1] The reasoning underlying this exception is consistent with the purposes and protections of the Sixth Amendment. When the pending charge is "so inextricably intertwined" with the charge under investigation "the right to counsel for the pending charge cannot constitutionally be isolated from the right to

---

[1] See, e.g., United States v. Kidd, 12 F.3d 30, 32 (4th Cir. 1993) (recognizing but not applying the exception), cert. denied, 114 S.Ct. 1629 (1994); Hendricks v. Vasquez, 974 F.2d 1099, 1104 (9th Cir. 1992) (same); United States v. Carpenter, 963 F.2d 736, 740-41 (5th Cir.) (same), cert. denied, 506 U.S. 927 (1992); United States v. Hines, 963 F.2d 255, 257-58 (9th Cir. 1992) (same); United States v. Cooper, 949 F.2d 737, 743-44 (5th Cir. 1991) (same), cert. denied, 504 U.S. 975 (1992); United States v. Michteltree, 940 F.2d 1329, 1342-43 (10th Cir. 1991) (applying the exception); People v. Clankie, 530 N.E.2d 448, 452 (Ill. 1988) (same); State v. Tucker, 645 A.2d 111, 120-25 (N.J. 1994) (recognizing but not applying the exception), cert. denied, 115 S.Ct. 751 (1995); In re Pack, 616 A.2d 1006, 1008-11 (Pa. 1992) (applying the exception).

7

counsel for the uncharged offense." Hines, 963 F.2d at 257; see also Cooper, 949 F.2d at 743. "[T]o hold otherwise[] would allow the [government] to circumvent the Sixth Amendment right to counsel merely by charging a defendant with additional related crimes" after questioning him without counsel present. In re Pack, 616 A.2d at 1011.

In a scholarly opinion we find instructive, the Maryland Court of Appeals extensively analyzed the "closely related" exception to the offense-specific requirement of the Sixth Amendment in Whittlesey v. State, 665 A.2d 223 (Md. 1995), cert. denied, 116 S.Ct. 1021 (1996). Collecting cases, the Whittlesey Court identified two lines of decisions that had emerged from courts considering the exception. In the first line of decisions, courts invoke the exception where (1) the offenses are "closely related," construing that phrase relatively broadly, and (2) there is evidence of deliberate police misconduct in the process of eliciting the incriminating statements. See, e.g., United States v. Martinez, 972 F.2d 1100 (9th Cir. 1992) (remanding to determine whether state prosecutors had deliberately dropped charges against the defendant to facilitate a federal investigation of the same conduct); Mitcheltree, 940 F.2d at 1329 (reversing witness tampering conviction where the government exploited a contact between the defendant, who was indicted for a drug offense, and a government witness, to acquire evidence for both the drug prosecution and a tampering charge related to the contact with the witness).

In the second line of decisions examined by the Whittlesey

8

court, the focus is entirely on whether the facts underlying the charged and uncharged offenses are either "closely related" or "inextricably intertwined"; two terms which we take to mean the same thing.  In these opinions, the unifying theme is that the right to counsel will carry over from the pending charge to the new charge only where the new charge arises from the same acts and factual predicates on which the pending charges were based. Whittlesey, 665 A.2d at 235 (citations omitted).  In determining whether the same acts and factual predicates underlie both the pending and the new charges, courts have looked for similarities of time, place, person and conduct.  See, e.g., Kidd, 12 F.3d at 33; Hines, 963 F.2d at 257-58; Vasquez, 974 F.2d at 1104-05; Carpenter, 963 F.2d at 740-41.

It is undisputed that before Arnold's arrest he retained an attorney to represent him in connection with the government's ongoing investigation into the bank larcenies.  It is also undisputed that Arnold's attorney advised the government that he was representing Arnold and that Arnold should not be questioned in his absence.  Because Arnold's right to counsel for the larceny, laundering and witness intimidation charges attached on the morning of March 28, 1995, when the sealed indictment on these charges was returned, the issue is whether Arnold's right to counsel carried over to the March 28, 1995 "sting" operation and the subsequent indictment for the attempted murder.  We have not decided whether to recognize the "closely related" exception to the offense specific requirement of the Sixth Amendment.  This case requires that we now do so.

Arnold argues that both offenses involved the same witness and arise out of precisely the same facts and circumstances -- namely, Arnold's thefts and the threat that Kloss, as a potential witness, posed to him. Most importantly, from Arnold's perspective, is the idea that his attempt to hire a hit man strongly indicates that he threatened Kloss earlier and that the threats were made to silence a potential witness, thereby establishing a common base of evidence from which the charges of attempted murder and witness intimidation arose. Finally, Arnold correctly notes that the government's failure to have sufficient evidence to indict him on the attempted murder charge before the March 28 "sting" cannot justify violating his Sixth Amendment rights to gather the evidence necessary to support an indictment for attempted murder.

We adopt the "closely related" exception and hold that it applies here. Indeed, it is difficult to understand how the witness intimidation and attempted murder of a witness offenses could be any more closely related. As the record shows, both charges: (1) involve the same witness; (2) arise from the same facts and circumstances; (3) are closely related in time; and, (4) involve conduct related to Arnold's attempt to prevent Jennifer Kloss from cooperating with federal authorities concerning his crimes.

More specifically, the indictment for the witness intimidation count explicitly charges that Arnold had threatened to kill Jennifer Kloss if she told the authorities about his crimes. This charge involved precisely the same type of

10

underlying conduct as the attempted murder charge -- violent action taken to impede a witness's participation in or cooperation with a federal criminal investigation. Given that Arnold's central purpose and the intended results of both offenses were the same, we cannot but conclude that the two offenses were sufficiently related for purposes of the Sixth Amendment exception. Moreover, the crimes Arnold sought to conceal by the murder he attempted were the same crimes that motivated his acts of intimidation. Indeed, as the government concedes, it was Arnold's threats to kill Kloss if she disclosed his crimes to the federal authorities that served as the impetus for the March 28 "sting" operation.

In sum, we are persuaded that Arnold's witness intimidation and attempted murder of a witness were closely related offenses and arose from the same predicate facts, conduct, intent and circumstances. As a result, we hold that Arnold's Sixth Amendment right to counsel, which attached to the witness intimidation charge on the morning of March 28 when he was indicted, carried over to the attempted murder of a witness charge. Consequently, the incriminating statements elicited from Arnold during the "sting" operation on the afternoon of March 28 were obtained in violation of Arnold's Sixth Amendment right to counsel, and the district court erred by failing to suppress the tape recording. Because the "sting" operation tape was the only evidence against Arnold on the attempted murder charge, the court's error was not harmless. Accordingly, we will vacate Arnold's conviction for attempted murder of a witness, and remand

11

the matter to the district court either for retrial or for the charge to be dismissed.[2]

## IV.

Arnold also asserts that the district court erred by enhancing his base offense level two points for perjury under U.S.S.G. § 3C1.1. Section 3C1.1 of the U.S.S.G. provides that "[i]f the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by 2 levels." The Guidelines expressly include perjury as conduct to which this enhancement applies. U.S.S.G. § 3C1.1, Application Note 3(b); United States v. Dunnigan, 507 U.S. 87, 92–93, 113 S.Ct. 1111, 1115–16 (1993).

In applying this enhancement, Application Note 1 of U.S.S.G. § 3C1.1 states:

This provision is not intended to punish a defendant for the exercise of a constitutional right. A defendant's denial of guilt (other than a denial of guilt under oath that constitutes perjury), refusal to admit guilt or provide information to a probation officer, or refusal to enter a plea of guilty is not a basis for application of this provision. *In applying this provision in respect to alleged false testimony or statements by the defendant, such testimony or statements should be evaluated in a light most favorable to the defendant* (emphasis added).

---

[2] This decision calls Arnold's conviction for witness intimidation into question. Both parties admit that a limiting instruction for the use of the March 28 tape recording was neither requested nor given. We conclude, nonetheless, that the improper admission of the March 28 tape recording, even without a limiting instruction, was harmless beyond a reasonable doubt. The evidence against Arnold with respect to the intimidation charge was overwhelming. Therefore, we will affirm Arnold's witness intimidation conviction.

12

The record shows that at Arnold's post-trial motion for acquittal, the district court independently reviewed the trial testimony. It did not believe Arnold's claim that threatening gestures were made toward him during the conversations recorded on March 27 and 28, and therefore his request that Jennifer Kloss be killed was made involuntarily. To support its conclusion, the court stated for the record that "[i]t was obvious from the voice timbre and content of the tape recordings that this claim was not only absurd, it was willfully false."

In addition, the court also reviewed the testimony of a defense witness, Herbert Truhe, who testified that Introcaso was responsible for Arnold's plan to have Jennifer Kloss killed. The court concluded that "Herbert Truhe's testimony was highly improbable in view of the content of the tape recordings and the jury resolved the conflicting testimony in favor of the government." Finally, the court also noted that both Jennifer Kloss and Edgardo Ramos testified about Arnold's threats and attempts to silence Jennifer Kloss.

At Arnold's sentencing hearing, the court reaffirmed its decision to apply the obstruction of justice enhancement to Arnold's sentence by noting that it had already made a finding that Arnold's testimony had been "willfully false." Arnold argues that the court erred because it viewed the evidence in the light most favorable to the government during the post-trial motion. Arnold contends that under U.S.S.G. § 3C1.1, the court was required to make an independent finding whether he had committed perjury, and in doing so was required to view the

13

evidence in a light most favorable to him, and under a clear and convincing standard.

Courts of Appeals in other circuits have reached various conclusions on this issue. Three courts interpret Application Note 1 to Section 3C1.1 to require a higher standard of proof than mere preponderance of the evidence. United States v. Montague, 40 F.3d 1251, 1253-54 (D.C. Cir. 1994) (clear-and-convincing); United States v. Onumonu, 999 F.2d 43, 45 (2d Cir. 1993) (clear-and-convincing); United States v. Willis, 940 F.2d 1136, 1140 (8th Cir. 1991) ("[n]o enhancement should be imposed based on the defendant's testimony if a reasonable trier of fact could find the testimony true"), cert. denied, 507 U.S. 971 (1993).

As the Court of Appeals explained in Montague, 40 F.3d at 1254, "[W]e must assume that, in writing the Application Note to section 3C1.1, the Sentencing Commission intended to create an exception to the usual practice of employing the preponderance-of-the-evidence standard in sentencing decisions." In practice, the application of a higher standard of proof in a § 3C1.1 perjury enhancement requires that "the fact finder give the benefit of the doubt to the defendant . . . and find perjury only on evidence with respect to which the judge is clearly convinced." Id. at 1255.

Other courts interpret this to require little more than "simply instruct[ing] the sentencing judge to resolve in favor of the defendant those conflicts about which the judge, after weighing the evidence, has no firm conviction." United States v.

14

<u>Franco-Torres</u>, 869 F.2d 797, 801 (5th Cir. 1989); <u>accord</u> <u>United States v. Barbarosa</u>, 906 F.2d 1366, 1370 (9th Cir.), <u>cert. denied</u>, 498 U.S. 961 (1990).  Other courts have applied the standard a bit differently.  <u>United States v. Clark</u>, 84 F.3d 506, 510 (1st Cir.) (". . . [A]mbiguities that plausibly suggest that the testimony or statements were innocent as opposed to obstructive . . . may have to be resolved in favor of the innocent reading."), <u>cert.</u> <u>denied</u>, 1996 WL 514207; <u>United States v. Zajac</u>, 62 F.3d 145, 150–51 (6th Cir.) ("firm conviction"), <u>cert.</u> <u>denied</u>, 116 S.Ct. 681 (1995).

We have never directly decided the question, commenting only generally on the issue in <u>United States v. Colletti</u>, 984 F.2d 1339, 1348 (3d Cir. 1992).  In <u>Colletti</u>, a pre-<u>Dunnigan</u> case challenging section 3C1.1 as unconstitutional, we stated:

> In our view, in order to warrant the two point enhancement for obstruction of justice, the perjury of the defendant must not only be clearly established, and supported by evidence other than the jury's having disbelieved him, but also must be sufficiently far-reaching as to impose some incremental burdens upon the government, either in investigation or proof, which would not have been necessary but for the perjury.

<u>Colletti</u> does not provide a clear indication of the specific burden of proof to be applied.  Nonetheless, its "clearly established" requirement counsels toward a standard of proof higher than a mere preponderance.

We are persuaded that the Application Note intends a higher standard than a preponderance of evidence.  We hold that the Application Note's command to evaluate a defendant's alleged false testimony or statements "in a light most favorable to the

15

defendant," requires the sentencing court to refrain from imposing a § 3C1.1 enhancement unless, in weighing the evidence, it is clearly convinced that it is more likely than not that the defendant has been untruthful.

Here, it is unclear what standard of proof the district court used when reaching its determination that Arnold had committed perjury. Moreover, because there is no indication in the record that the district judge, when relying on his earlier finding, placed the burden of proof upon the government and viewed the evidence in the light most favorable to Arnold, we conclude that the district judge's decision that Arnold committed perjury did not meet the requirements of § 3C1.1. Accordingly, we will vacate Arnold's sentence and remand the matter to the district court for resentencing. On remand, the district court must use the clear and convincing standard, place the burden of proof upon the government, and support its decision with the findings required by the Supreme Court's decision in Dunnigan.[3]

V.

The defendant raises three other sentencing issues. We can

---

[3] Judge Roth does not believe that the "clear and convincing" standard is applicable here. In her opinion, the language of Application Note 1 of U.S.S.G. § 3C1.1 provides a sufficiently stringent basis to determine whether the enhancement is appropriate using a "preponderance of the evidence" standard. The adoption of a "clearly convincing" standard is not helpful to district court judges who must keep in mind a growing list of different standards of proof to apply in sentencing proceedings.

Because the district judge did not, however, indicate that his determination of "willfully false" was made in a light most favorable to the defendant, Judge Roth agrees it is necessary to remand on the issue of the enhancement for obstruction of justice.

dispose of them briefly.

Arnold contends that the district court erred by its upward departure because there was nothing "unusual or extraordinary" about his crimes that would warrant a departure from the Guidelines. We need not decide the merits of Arnold's contention because the district court must now recalculate Arnold's sentence. As such, the application of the grouping rules under § 3D1.4 of the Guidelines will change, rendering Arnold's upward departure issue moot.

Second, Arnold argues that the district court failed to make the proper findings that he had the ability to pay restitution. The government concedes error, and we agree. See United States v. Copple, 74 F.3d 479, 482 (3d Cir. 1996). Therefore, we will vacate the restitution order and remand the matter for the district court to find whether Arnold is able to pay restitution.

Finally, Arnold contends that the district court erred by delegating the timing and the amount of his restitution payments to his probation officer. The government again concedes error, and again we agree. See United States v. Graham, 72 F.3d 352, 356 (3d Cir. 1995), cert. denied, 116 S.Ct. 1286 (1996). Hence, on remand the district court itself must determine both the timing and the amount of the restitution payments.

VI.

In summary, we will reverse Arnold's conviction for attempted murder, affirm his conviction for witness intimidation, vacate his sentence, and remand the matter to the district court for proceedings in accordance with this opinion.

17