726 So.2d 841 (1999)
Dennis J. TAYLOR, Appellant,
v.
STATE of Florida, Appellee.
No. 97-4454
District Court of Appeal of Florida, First District.
February 5, 1999.
*842 Nancy A. Daniels, Public Defender, and Glen P. Gifford, Assistant Public Defender, Tallahassee, for Appellant.
Robert A. Butterworth, Attorney General, and Randy L. Havlicak, Assistant Attorney General, Tallahassee, for Appellee.
KAHN, J.
Appellant, Dennis J. Taylor, appeals his conviction after jury trial for dealing in stolen property. Taylor argues that the trial court erred by admitting into evidence a statement he made to police investigators after his Sixth Amendment right to counsel had attached on the charge of dealing in stolen property. He also argues the trial court erred by denying his motion for judgment of acquittal. We find no merit to the second argument, but do find that Taylor's Sixth Amendment right was violated by the use against him at trial of statements he made under questioning by the police after he invoked his right to counsel.
According to the testimony at trial, someone burglarized the Jacksonville home of Martez Curry sometime after 7:00 in the morning on April 28, 1997. Curry did not actually discover this until several days later when she found that eight items of jewelry and some men's clothes were missing. At that time, she reported the burglary, and, later, the missing items to the police. A burglary investigation by Detective Graham revealed that four pieces of jewelry belonging to Curry were pawned on the morning of April 28, 1997, at 9:16. Taylor's name and thumbprint were found on the pawn ticket for these items.
On June 26, an officer with the Jacksonville Sheriff's Office arrested Taylor and charged him with dealing in stolen property. The charge was based upon the act of pawning Miss Curry's jewelry. At a first appearance the next day, the court appointed the public defender to represent Taylor, and Taylor signed a notice that he would not agree to questioning outside the presence of his lawyer.
On July 2, Detective Graham asked to have Taylor brought to an interview room. Taylor's court-appointed lawyer was not present, nor was the lawyer notified of any prospective police questioning. Detective Graham then advised Taylor of his Fifth Amendment rights under the Miranda decision. Taylor waived his rights and, according to Detective Graham's testimony, the following transpired:

*843 A: [By Detective Graham] I initially offered him or gave him a synopsis of why he was in jail so that there was no misunderstanding about the chain of items that we would be interested in.
Q: [By Asst. State Attorney] What did you tell him in regard to that, sir?
A: I told him initially that he was in jail for dealing in stolen property, and because he had pawned some property and the investigation led me to believe he had pawned the property at Value Pawn on Edgewood Avenue, and I told him I wasn't interested in any of that but I was interested in the burglary case from which the property initially came from. Then I began to ask him, `Did you have anything to do with the burglary of the home?'
* * * * * *
[H]e answered that by saying that he denied any involvement in the burglary case. And he also volunteered that he had never been to the above residence that is in my report, that he had never even been to the pawnshop.
Q: Did he say anything else?
A: That was all. At that point it was concluded it. That's all the information he would offer in regards to the burglary investigation.
Q: Did you ever specifically ask him anything in regards to the pawnshop?
A: I never mentioned anything about the pawnshop other than the initial synopsis I gave his so that he would understand why he was in jail.
Taylor's statement that he had never been to the Curry residence or to the pawnshop was admitted against him in the prosecution for dealing in stolen property. In denying a defense motion to suppress the statement, the trial court made several findings:
The officer's testimony in this case is in fact that he deliberately and intentionally went there to discuss with him only the matters pertaining to the burglary offense. There wasn't any subterfuge or pretense pertaining to the other.
Now, just because Mr. Taylor elected to make some statements that has to do with the pawnshopI don't think that's attributed to the conduct of the officers.
I would find that he was advised of his rights, and all the statements made by the defendant was done so freely and voluntarily without any promise or any threat or any coercion and were freely and voluntarily given.
The State used the statement in question against Taylor in the prosecution for dealing in stolen property, as to which his right to counsel had attached and for which he was in custody. The State did not prosecute the burglary charge. The issue in this case is whether Taylor's Sixth Amendment right to counsel was violated when Detective Graham conducted the interrogation, ostensibly on the inchoate burglary charge. Taylor agrees no separate Sixth Amendment right had attached as to that charge.
Under the Sixth Amendment to the United States Constitution, a criminal defendant is entitled to the aid of counsel, not only at trial, but prior to trial at critical periods of the proceedings. See Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932). According to the United States Supreme Court, a criminal defendant is denied basic Sixth Amendment protections when the government uses against him at trial evidence of his own incriminating words, deliberately elicited from him after he has been indicted and in the absence of his lawyer. See Massiah v. United States, 377 U.S. 201, 206, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964). Here, the State argues that the Sixth Amendment right to counsel, developed in Powell, Massiah, and other cases, was not violated because that right is offense-specific, and here the police told Taylor they only wanted to question him concerning the burglary charge.
On the facts of this case, we find that the Sixth Amendment right would be illusory were we to allow admission of Taylor's statements under questioning by Detective Graham, irrespective of Detective Graham's disclaimer concerning his lack of interest in the charge as to which the statements were ultimately admitted. In so holding, we are instructed by the pronouncement of the United States Supreme Court, characterizing the *844 breadth of the Sixth Amendment right to counsel:
Once the right to counsel has attached and been asserted, the State must of course honor it. This means more than simply that the State cannot prevent the accused from obtaining the assistance of counsel. The Sixth Amendment also imposes on the State an affirmative obligation to respect and preserve the accused's choice to seek this assistance. We have on several occasions been called upon to clarify the scope of the State's obligation in this regard, and have made clear that, at the very least, the prosecutor and police have an affirmative obligation not to act in a manner that circumvents and thereby dilutes the protection afforded by the right to counsel.
Maine v. Moulton, 474 U.S. 159, 170-171, 106 S.Ct. 477, 88 L.Ed.2d 481 (1985) (footnote omitted).
Here the State correctly urges that the Sixth Amendment right to counsel is offense specific. See McNeil v. Wisconsin, 501 U.S. 171, 175, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991); Smith v. State, 699 So.2d 629 (Fla.1997), cert. denied mem. ___ U.S. ____, 118 S.Ct. 1194, 140 L.Ed.2d 323 (1998). The State reasons that at the time Taylor made the statement concerning whether he had ever been to the pawnshop, his Sixth Amendment right to counsel had attached only to the pending charge of dealing in stolen property. Because Detective Graham stated to Taylor that Graham was not interested in the pending charge, but only wanted to ask questions about the burglary, the State concludes that such questioning did not violate the Sixth Amendment.
Appellant recognizes that if he has any right to counsel, it is bottomed upon the Sixth Amendment because he executed a free and voluntary waiver of his Fifth Amendment right to counsel pursuant to the Miranda decision. Appellant also recognizes that the Sixth Amendment right is offense specific. He argues, nevertheless, that police questioning concerning the burglary was unconstitutional because the offenses of burglary and dealing in stolen property were, on the facts of this case, inextricably intertwined.
Here, the facts reveal a burglary after 7:00 in the morning. The dealing in stolen property charge involved items taken in the burglary and pawned no later than 9:16 on the same morning as the burglary. Because Taylor was not prosecuted for the burglary, it is impossible to say with absolute certainty what the central items of evidence against him on that charge would have been; however, it is only fair to conclude that the jewelry he pawned, as well as the pawn ticket with his name and fingerprint, would have been crucial to any such prosecution.
In United States v. Arnold, the Third Circuit Court of Appeals noted that two exceptions to the offense-specific rule generally apply to the Sixth Amendment right to counsel. 106 F.3d 37 (3d Cir.1997). The court first reviewed Brewer v. Williams, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977), where the defendant was formally charged with the abduction of a small girl. After that charge had been lodged, the police, using a "Christian burial speech" to gain the defendant's trust, elicited from the defendant the location of the girl's body and subsequently charged the defendant with murder. The Supreme Court upheld reversal of the murder conviction, holding that the defendant's statements to the police about the location of the body were inadmissible in the murder case. The court also noted that in Moulton, the defendant's Sixth Amendment right was violated. After Moulton's indictment for theft, his co-defendant agreed to cooperate with the police by attempting to elicit incriminating statements from Moulton. The effort was successful and the incriminating statements made by Moulton to the co-defendant were used as the basis for filing burglary and other additional charges against Moulton. The Supreme Court found a Sixth Amendment violation, notwithstanding the fact that Moulton had not yet been charged with burglary when he made incriminating statements to the co-defendant.
In Arnold, the court next articulated the exception to the offense-specific limitation upon the Sixth Amendment that applies in the present case:
[O]nce the right to counsel attaches with respect to a charged offense, it carries *845 over to "closely related" but uncharged crimes. The reasoning underlying this exception is consistent with the purposes and protections of the Sixth Amendment. When the pending charge is "so inextricably intertwined" with the charge under investigation, "the right to counsel for the pending charge cannot constitutionally be isolated from the right to counsel for the uncharged offense."
106 F.3d at 40-41 (footnote omitted). As the Third Circuit noted, any other holding would allow the prosecution to circumvent the Sixth Amendment right to counsel by merely charging the defendant with additional related crimes after conducting interrogation without counsel present. Id.
In the present case, as in Arnold, "both offenses ... arise out of precisely the same facts and circumstances...." 106 F.3d at 41. We cannot logically perceive how the police disclaimer of any interest in the charge of dealing in stolen property could automatically terminate the Sixth Amendment right to counsel when the evidence against Taylor consisted of the pawn ticket and the fact that he had pawned four pieces of jewelry belonging to Ms. Curry within two hours of the burglary. We find that the facts of the charged and uncharged offense are inextricably intertwined and, therefore, Taylor's previously invoked right to counsel survived the police disclaimer concerning the dealing in stolen property charge. The charges here arise from the same facts and circumstances, are closely related in time, and involve the act of obtaining and using property belonging to the burglary victim. If the Sixth Amendment right, as articulated by the United States Supreme Court over many decades, is to have meaning, we could not hold otherwise.
The State urges us not to recognize a "closely related" or "inextricably intertwined" exception to the Fifth Amendment because no Florida court has done so before. Specific recognition of these exceptions has, in all likelihood, not been necessary because police have generally honored the teachings of cases such as Massiah and Moulton. The United States Supreme Court constructions of the Sixth Amendment recognize that criminal defendants, unsophisticated as they often are, have a right to rely on counsel as a "medium" between the accused and the prosecution. See Moulton, 474 U.S. at 176, 106 S.Ct. 477. Again, we note that the interrogation in this case, conducted after the police knew that the pawned jewelry came from the Curry residence, related directly to the subject matter of the charge of dealing in stolen property. We understand and concur that "the Sixth Amendment is not violated wheneverby luck or happenstancethe State obtains incriminating statements from the accused after the right to counsel has attached." Id., at 176, 106 S.Ct. 477. "However, knowing exploitation by the State of an opportunity to confront the accused without counsel being present is as much a breach of the State's obligation not to circumvent the right to the assistance of counsel as is the intentional creation of such an opportunity." Id. Here, had Detective Graham not been interested in the source of the property pawned by appellant, he would have had no reason to inquire about the burglary.
We might analogize this situation to a case in which the defendant is arrested for possession of drug paraphernalia, say a crack pipe, based upon probable cause that the pipe contains cocaine residue. After the defendant has obtained the benefit of appointed counsel, the State tests the pipe and determines with certainty that it contains cocaine residue. Could State authorities then legally question the defendant about the cocaine, without counsel, and after stating to defendant that they were not interested in the pipe, only the cocaine? We think the answer is self evident, even though under Florida law a defendant convicted of possession of drug paraphernalia may also be prosecuted and convicted for the separate crime of possession of the cocaine contained in the paraphernalia. See King v. State, 637 So.2d 956 (Fla. 2d DCA 1994).
Similarly, in the present case the charge of dealing in stolen property is a separate offense from the charge of burglary, even where the burglary produced the stolen property. The interconnection of the two crimes cannot, however, be denied. The offense of dealing in stolen property requires, *846 among other things, that the defendant knew or should have known that the property was stolen. See §§ 812.012(6), 812.019(1), Fla. Stat. (1997). Here, the inquiry concerning the burglary sought information from Taylor concerning the loss of the very same jewelry that formed the basis of the offense for which he had been charged and, moreover, Taylor's knowledge that the jewelry had been stolen was a crucial element of the charged offense.
Needless to say, determination of whether offenses are closely related for Sixth Amendment purposes will depend entirely on the facts and circumstances of the given case. Here, however, the physical evidence is the same, the same acts and factual predicates apply to both offenses, and the "similarities of time, place, person and conduct" are striking. Arnold, 106 F.3d at 41. Therefore, the trial court erred by denying the motion to suppress.
REVERSE and REMANDED for a new trial.
JOANOS, J., concurs.
DAVIS, J., dissents with opinion.
DAVIS, J., dissenting.
I respectfully dissent. The majority opinion states that "on the facts of this case" the offenses of dealing in stolen property and burglary were so inextricably intertwined that invocation of the Sixth Amendment right to counsel in connection with the former charge precluded unrepresented questioning regarding the second offense. I am in sympathy with that view, and agree that if ever there were a case in which Florida should consider adopting the "inextricably intertwined" rationale, this is it. Nor can I disagree with the laudable conclusion that interrogators should not be permitted to deliberately circumvent the constitutional rights of the accused. However, strong policy reasons also support continued reliance on a bright-line test under which the Sixth Amendment right to counsel is limited to the specific offense in connection with which it has been invoked. The Florida Supreme Court has stated clearly that "the right to counsel is charge specific and invocation of the right on one offense imposes no restrictions on police inquiry into other charges for which the right has not been invoked." Traylor v. State, 596 So.2d 957, 968 (Fla. 1992). See also Smith v. State, 699 So.2d 629, 639 (Fla.1997), cert. denied mem., ___ U.S. ____, 118 S.Ct. 1194, 140 L.Ed.2d 323 (1998). Extending the protection of the Sixth Amendment beyond the specific charge to inextricably intertwined offenses is a departure from Florida Supreme Court precedent and beyond the power of this court. "If and when such a change is to be wrought by the judiciary, it should be at the hands of the Supreme Court rather than the District Court of Appeal." Hoffman v. Jones, 280 So.2d 431, 434 (Fla.1973). Accordingly, I would affirm the conviction but certify a question to the Florida Supreme Court regarding the adoption of the "inextricably intertwined" test.