# CIRCUIT COURT OF FAIRFAX COUNTY

Commonwealth of Virginia

v.

Paul Edward Dickson

August 18, 2000

Case No. (Criminal) 97717

BY JUDGE ARTHUR B. VIEREGG

The defendant Paul Edward Dickson is charged with the malicious burning of the First Baptist Church of Kingstowne in Springfield, Virginia, and the statutory burglary of that Church. Mr. Dickson filed a motion to suppress the use of statements and documents furnished by him to various law enforcement officers. He contends that his Sixth Amendment right to counsel was violated.

The facts in this case were fully developed at a suppression hearing conducted on July 21, 2000. I will outline the pertinent facts here. Mr. Dickson has been married to Judy Dickson since 1997. His wife is a member of the First Baptist Church of Kingstowne. Mr. Dickson believed his wife was having a sexual relationship with the pastor of that church, Reverend Clyde Duncan, as well as other female parishioners. When he returned to Northern Virginia following treatment at a Veterans Hospital in Morgantown, West Virginia, Mr. Dickson found that his wife had left the parties' residence with her son and that his belongings were missing.

Thereafter, Mr. Dickson began following and threatening his wife's friend, Ms. Kimberly Powell. Ultimately, on March 25, 2000, he followed Ms. Powell to his wife's home at which time an altercation occurred during which Mr. Dickson struck his wife's son. Several days thereafter, on March 27, 2000, the First Baptist Church of Kingstowne was set afire. Ms. Dickson contacted the police and indicated that Mr. Dickson had set the fire. In the

course of a later interview with Detective Machonise and Fire Investigator William Garrett, she was given advice as to how she might prosecute Mr. Dickson for his conduct toward her son, Ms. Powell and herself. Later that day, Ms. Dickson and Ms. Powell swore out warrants against Mr. Dickson for telephone abuse, stalking, assault (two counts), and tampering.

Mr. Dickson was arrested two days later, on March 29, 2000, while sleeping in his car. At that time, officers Graham Buck and Michael Spillars executed the misdemeanor warrants sworn out by Ms. Powell and Ms. Dickson. Incident to that arrest, Fire Investigator Terry Hall and Detective Pedro Crump conducted an inventory search of Mr. Dickson's car, in which they discovered cans wrapped in tape and what they believed to be a hazardous substance. Mr. Dickson was then taken before the magistrate on the arrest warrants. The following day, on March 30, 2000, Mr. Dickson was arraigned on the above charges and received Court appointed counsel to represent him. Almost two months later and after several police interviews with Mr. Dickson, the grand jury returned an indictment against Mr. Dickson for the arson and burglary of the First Baptist Church of Kingstowne.

In relation to the arson and burglary charges pending in this case, Mr. Dickson asserts that the interview conducted after his arraignment on March 30th by Special Agent Eric Thomas and the interview conducted March 31st by Fire Investigator William Garrett, both without counsel, were violations of his Sixth Amendment right to counsel and that all statements or evidence obtained during these interviews should be suppressed. The Commonwealth asserts that at the time of these interviews the Sixth Amendment right to counsel had not attached and that even if it had, Mr. Dickson initiated both of these interviews and therefore made a valid waiver of his right to counsel.

### Attachment Through the "Inextricability" Test

Mr. Dickson contends that his right to counsel attached upon his presentation to the magistrate for the five misdemeanor charges above. At the July 21, 2000, hearing I rejected that argument. The Sixth Amendment right to counsel attaches with regard to any of the misdemeanor charges when Mr. Dickson was first arraigned on those charges, not when he was merely arrested and appeared before a magistrate to set bond. See, *Tipton v. Commonwealth*, 18 Va. App. 832, 835, 447 S.E.2d 539 (1994). Dickson's Sixth Amendment right to counsel, therefore, attached first when he was arraigned on the stalking charge at 8:30 a.m. on March 30, 2000.

The Sixth Amendment right to counsel only affords a basis to suppress the results of Special Agent Eric Thomas' interrogation and Fire Investigator

William Garrett's interrogation pertaining to the arson and burglary charges if those interrogations were inextricably related to the other misdemeanors as to which Mr. Dickson had been arraigned and as to which his Sixth Amendment right to counsel had attached. I conclude that the arson and burglary charges were not inextricably related to those misdemeanors.

Although the Sixth Amendment right to counsel is offense-specific, the right to counsel arguably[1] attaches to other crimes which are inextricably related to the charged offenses. In *Maine v. Moulton*, 474 U.S. 159, 180, 88 L. Ed. 2d 481, 106 S. Ct. 477 (1985), the United States Supreme Court observed that:

> to allow the admission of evidence obtained from the accused in violation of his Sixth Amendment rights whenever the police assert an alternative, legitimate reason for their surveillance invites abuse by law enforcement personnel in the form of fabricated investigations and risks the evisceration of the Sixth Amendment right recognized in *Massiah*.

Based on this reasoning, some courts have recognized an exception to the offense-specific limitation to an accused's Sixth Amendment right to counsel. In considering whether underlying crimes are inextricably related to the charged offenses, courts will examine "all of the facts and circumstances relating to the conduct involved, including the identity of the persons involved (including the victim, if any), and the timing, motive, and location of the crimes." *United States v. Covarrubias*, 179 F.3d 1219, 1224 (9th Cir. 1999).

Most of the cases cited by Mr. Dickson in support of his inextricability argument are ones in which either the same specific conduct was involved or the same transaction gave rise to multiple criminal charges. See, e.g., *Maine v. Moulton, supra; Brewer v. Williams*, 430 U.S. 387, 51 L. Ed. 2d 424, 97 S. Ct. 1232 (1977). No case, however, holds that mere common motives for the commission of multiple crimes is a condition sufficient to satisfy the inextricability test. See, e.g., *United States v. Melgar*, 139 F.3d 1005 (4th Cir.

---

[1] Neither the Supreme Court of Virginia nor the Virginia Court of Appeals has decided whether and to what extent an accused's Sixth Amendment right to counsel attaches to uncharged crimes on account of those crimes' relationship to crimes as to which the accused has been charged and as to which his Sixth Amendment right to counsel has attached. In *Commonwealth v. Hall*, 1996 Va. App. LEXIS 538, No. 0282-96-3 (July 15, 1996), in an unpublished decision, the Court of Appeals affirmed a trial court's application of the inextricability concept to a series of theft crimes deemed by the trial court to be a common enterprise.

1998); *United States v. Kidd,* 12 F.3d 30 (4th Cir. 1993); *United States v. Covarrubias, supra; United States v. Doherty,* 126 F.3d 769 (6th Cir. 1997); *United States v. Arnold,* 106 F.3d 37 (3rd Cir. 1997).

I do not find that *Commonwealth v. Hall, supra,* supports Mr. Dickson's motion to suppress here. First, the Court of Appeals found that the series of theft crimes involved in *Hall* were part of a "common enterprise." *Id.* The crimes here do not have even the common denominator of being thefts. Second, even if Mr. Dickson's misdemeanors and his alleged arson and burglary are viewed as part of a common enterprise of ill will against his wife and persons close to her, I find the common enterprise formula adopted by the Court in *Hall* to be at odds with the policy supporting the inextricability test for protection of an accused's Sixth Amendment right to counsel. The purpose of the inextricability exception is to forestall the police from using uncharged crimes arising from out of the same transaction as a pretext to obtain incriminating statements from an accused with regard to crimes as to which his Sixth Amendment right to counsel had attached. *See, United States v. Kidd, supra.* It is not to insulate police from cooperating in the investigation of uncharged crimes as to which the Sixth Amendment right to counsel had not attached, here the arson and burglary.

I conclude further that the Fourth Circuit's decision in *United States v. Kidd, supra,* goes far to make plain that "inextricability," if it is recognized as a basis for suppressing statements and related evidence arising out of interrogations as to different crimes, must involve crimes that arise out of the same immediate transaction. I conclude the defendant's alleged acts arising from ill will toward various individuals, involving disparate conduct on different dates (albeit not dates necessarily far-removed from one another), against various individuals, do not constitute crimes inextricably related for Sixth Amendment suppression purposes. Mr. Dixon's Motion to Suppress the statements and evidence obtained during the two subject interviews is accordingly denied.

### Waiver of the Sixth Amendment Right to Counsel

The Commonwealth asserts that even if this Court were to find the offenses of arson and burglary so inextricably related to the charged misdemeanor offenses that the Sixth Amendment right to counsel had attached, Mr. Dickson, nonetheless, made a valid waiver of that right by initiating the interrogation with the officers. Mr. Dickson disputes that he initiated the interrogations, but claims that even if he had, he still did not

execute a knowing and intelligent waiver of his Sixth Amendment right to counsel.

It is well established that "if police initiate interrogation after a defendant's assertion, at an arraignment or similar proceeding, of his right to counsel, any waiver of the defendant's right to counsel for a police-initiated interrogation is invalid." *Michigan v. Jackson*, 475 U.S. 625, 636, 89 L. Ed. 2d 631, 106 S. Ct. 1404 (1986). The United States Supreme Court has not, however, considered what may constitute a valid waiver of the Sixth Amendment right to counsel in the context of a defendant-initiated interrogation. In determining such an issue, it is likely the Court will look to its *Miranda* jurisprudence and rely on the traditional test for whether the defendant made a knowing and voluntary waiver.

The Commonwealth cites *Michigan v. Harvey*, 494 U.S. 344, 108 L. Ed. 2d 293, 110 S. Ct. 1176 (1990), and *Bailey v. Commonwealth*, 20 Va. App. 236, 456 S.E.2d 144 (1995), for the proposition that a defendant may voluntarily waive his right to counsel after arraignment and appointment of counsel. In *Michigan v. Harvey*, the United States Supreme Court addressed a *police-initiated discussion* that was found to be in violation of *Michigan v. Jackson, supra*; and in *Bailey v. Commonwealth*, the Virginia Court of Appeals addressed a defendant-initiated interview where the *defendant signed a rights waiver* before he spoke to police. Both of these cases are, therefore, distinguishable from the case at bar.

In *Patterson v. Illinois*, 487 U.S. 285, 101 L. Ed. 2d 261, 108 S. Ct. 2389 (1985), the United States Supreme Court focused on the question of whether an "accused, who waived his Sixth Amendment rights during post-indictment questioning, [was] made sufficiently aware of his right to have counsel present during the questioning, and of the possible consequences of a decision to forgo the aid of counsel[.]" *Id.* at 292-93. In determining the validity of that waiver, the Court stated, "we are convinced that by admonishing petitioner with the *Miranda* warnings, respondent has met this burden and that petitioner's waiver of his right to counsel at the questioning was valid." *Id.* at 293. The Court went on to explain its decision, stating that the delivery of the *Miranda* warnings conveyed to the petitioner "the sum and substance of the rights that the Sixth Amendment provided him," and, in addition, "also served to make the petitioner aware of the consequences of a decision by him to waive his Sixth Amendment rights during postindictment questioning." *Id.*

No evidence presented in the July 21, 2000, hearing demonstrates the conveyance of any such warnings by the police to Mr. Dickson. Accordingly, if the Sixth Amendment right to counsel had attached, the statements and other evidence obtained by the police in the interviews with Special Agent

568

Eric Thomas on March 30, 2000, and Fire Investigator William Garrett on March 31, 2000, would be suppressed.